IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GARY J. LYON and
JEANNE G. LYON,

      Plaintiffs/Counter Defendants,

  vs.                                                         CIVIL NO.  08-1114 LFG/DJS

ESTEBAN A. AGUILAR, SR.,
AGUILAR LAW OFFICES, P.C,,
and DOES I-X,

      Defendants/Counter Claimants.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' CLAIMS FOR PROFESSIONAL MALPRACTICE AND
BREACH OF FIDUCIARY DUTY IN HANDLING OF CLAIMS AGAINST TRG**

THIS MATTER is before the Court on Defendants' Motion for Partial Summary Judgment on Plaintiffs' Claims for Malpractice-Professional Negligence and Breach of Fiduciary Duties in the Handling of Underlying Clams Against TRG. [Doc. 99].  The Court considered the motion and supporting documents, Defendants' Errata [Doc. 101] to the Motion, Plaintiffs' Response [Doc. 103], and Defendants' Reply [Doc. 107].  Oral argument is not necessary.

**Introduction**

Gary J. Lyon and Jeanne G. Lyon ("Lyons") bring a professional negligence claim against attorney Esteban A. Aguilar, Sr. and his professional corporation, Aguilar Law Offices, P.C. (hereinafter referred to as "Aguilar" or "Aguilars").  Lyons' *pro se* lawsuit against Aguilars is based on diversity jurisdiction and arises out of their dissatisfaction with Aguilars' handling of an earlier lawsuit prosecuted on Lyons' behalf against Title Resources Guaranty Company ("TRG"), a land

title company.

The TRG litigation concerned Lyons' claim that TRG was liable for attorney fees the Lyons incurred in an earlier lawsuit between the Lyons and the Atchison, Topeka & Santa Fe Railway Company ("AT&SF") concerning land access.

The Lyons didn't file their lawsuit against TRG until March 10, 2004 and, as an affirmative defense to that lawsuit, TRG asserted that the claim was time-barred, as it was filed beyond the applicable four-year statute of limitations.[1]

The evidence before the trial court showed that attorney Gregory Pelton, who had been hired by TRG to represent Lyons on other claims and later hired by Lyons to help them on claims outside the policy, wrote to the Lyons on January 31, 1995. His letter put the Lyons on notice that TRG claimed the title policy issued to them did not insure against the claims pressed by AT&SF because it was an issue of access.

In their deposition testimony, the Lyons confirmed that they were aware of their claims against TRG in 1995 when they received the Pelton letter, and that they always felt the issue raised in the AT&SF litigation should be covered by the title policy.

On a motion to dismiss under the statute of limitations, the trial court in the TRG litigation concluded that the Lyons knew of their claims against TRG as early as 1995 but did not bring suit against them until 2004, well after the expiration of the applicable statute of limitations.

The Lyons appealed the dismissal of their lawsuit to the New Mexico Court of Appeals,

---

[1]The Lyons actually tried to sue TRG a little earlier. They were sued by their former attorney Gregory Pelton for unpaid legal fees in 2002. The Lyons answered and counterclaimed against Pelton and TRG. TRG, however, was not a party to Pelton's attorney fee litigation, and since a counterclaim can only be asserted against a party to the litigation, TRG was dismissed from the Pelton/Lyon litigation on May 27, 2003. The dismissal was without prejudice. The Lyons did not file a separate lawsuit against TRG until the following year, March 10, 2004.

claiming that the trial judge erred by granting TRG's motion for summary judgment, and claiming that they did not know or discover their cause of action against TRG until substantially after receipt of the January 1995 Pelton letter.

The Court of Appeals rejected their argument:

> We agree with the District Court's decision to grant summary judgment in favor of Defendant. We first note that Plaintiffs [Lyons] do not dispute that they received Pelton's January 31, 1995 letter and that they understood it to mean that Defendant [TRG] "was taking the position that the title policy did not insure against" the issue presented in the 1995 lawsuit.
>
> * * *
>
> Plaintiffs admitted in their respective deposition examinations that they were aware of their potential claims against Defendant upon receiving Pelton's letter in 1995. Plaintiff Jeanne Lyon . . . testified at her deposition that although she conveyed to Pelton, "[p]robably both before and after" he wrote the letter that she understood the policy to cover the issues raised in the 1995 lawsuit, she never contacted Defendant [TRG] to inquire about coverage. In addition, she testified that after she received Pelton's letter, she never read the policy in a attempt to verify Pelton's conclusion. Similarly, Plaintiff Gary Lyon testified at his deposition that, in 1995, he was aware of the fact that Defendant had breached its obligation under the policy to provide Plaintiffs with coverage.

The Court of Appeals held:

> Our review of the record leads us to the conclusion that regardless of their reliance on Pelton's conclusion, Plaintiffs either actually knew or should have known, in 1995, that potential claims against Defendant under the policy existed. Such a conclusion serves to defeat Plaintiffs' discovery rule argument. Instead of pursuing their apparent, potential claims within the applicable statute of limitations period, Plaintiff chose to do nothing.

Lyons now assert that Aguilars were negligent in the way they represented Lyons in the TRG litigation, and they bring a multi-claim lawsuit against Aguilars.

3

**Factual and Procedural Background**

In their Motion for Partial Summary Judgment, Aguilars set forth in numbered sequence the material facts they claim are undisputed, as required by Local Rule. D.N.M.LR-Civ. 56.1(b).

In their Response, Lyons note particular facts with which they disagree. The Response does not comply with Local Rule 56.1(b), in that it does not "contain a concise statement of the material facts as to which the party contends a genuine issue does exist," and does not consistently "refer with particularity to those portions of the record upon which the opposing party relies."

The Factual Background set forth below includes the undisputed facts as stated by Aguilars, with notations as to any dispute between the parties as to the facts. The Court finds that none of the alleged factual disputes are material to the issues presented in the case and that summary judgment is therefore appropriate.

The complaint in this case was filed on November 24, 2008. [Doc. 1]. Lyons' claims arise from Aguilar's service as legal counsel for Lyons in two cases in New Mexico state district court: (1) a legal malpractice case against attorney Gregory V. Pelton ("Pelton"), counter-defendant in Cause No. CV-2002-08306, Second Judicial District Court, Bernalillo County; and (2) an insurance bad faith case against Title Resources Guaranty, Inc. ("TRG"), Cause No. CV-2004-01614, Second Judicial District Court, Bernalillo County. [Doc. 99, at 3-4]. The first case will hereinafter be referred to as the "Pelton case"; the second will be referred to as the "TRG case."

Lyons' complaint originally alleged nine counts against Aguilars, including breach of contract, negligent misrepresentation, malpractice - professional negligence, constructive fraud, breach of fiduciary relationship, negligent infliction of emotional distress, breach of New Mexico Unfair Practices Act, intentional infliction of emotional distress, and unjust enrichment. [Doc. 1].

The claim for negligent infliction of emotional distress was dismissed by stipulation of the

4

parties [Doc. 81]. All claims other than Count 3, professional malpractice, and Count 5, Breach of Fiduciary Duties, are dismissed with prejudice by a Memorandum Opinion and Order, entered contemporaneously with this Order, which grants Defendants' Motion for Partial Summary Judgment as to All Claims Not Covered by Professional Malpractice Insurance Policy [Doc. 98].

Thus, the only claims remaining in this case are Lyons' claims that Aguilar committed professional malpractice and breached fiduciary duties to Lyons in his handling of the two lawsuits, noted above, in state court.

In the present Motion, Aguilars assert that summary judgment is appropriate with respect to Lyons' claims for malpractice and fiduciary breach in connection with the handling of the lawsuit against TRG. Aguilars filed a separate Motion for Partial Summary Judgment [Doc. 100] with respect to the handling of the lawsuit against Pelton; that motion is the subject of a separate order in this case.

The Undisputed Material Facts are as follows:

Lyons purchased the Forked Lightning Ranch in Rowe, New Mexico, on September 25, 1990. In conjunction with that purchase, Lyons bought a title insurance policy from TRG. The policy insured Lyons against loss or damage resulting from "lack of right of access to and from the land." The policy contained various exceptions that exempted from coverage loss or damage related to certain unrecorded easements and other rights of access. [Doc. 99, at 3-4].

Following Lyons' purchase of the ranch, Lyons became involved in two lawsuits with parties who claimed ownership or rights by adverse possession to Tract 1 of the ranch. [Id., at 4].

One of the lawsuits was brought by Tapia, who made an adverse possession claim to an 878-acre section of Tract 1. Pursuant to the title insurance policy, TRG retained Pelton to represent Lyons in a quiet title action in federal court. On October 6, 1994, Judge James A. Parker entered

5

a judgment that quieted title in Lyons but awarded approximately 40 acres to Tapia.  According to Lyons, the judgment envisioned that Lyons would appeal the portion of Judge Parker's decision which awarded the 40 acres to Tapia, but Pelton failed to file an appeal. [Doc. 99, at 4-5; Doc. 1, at 4; Doc. 103, at 2; Docket Sheet in Lyon v. Tapia, Civ. No. 92-434 JAP/JHG].[2]

The other lawsuit was a quiet title action brought by Lyons against Ortiz, who also made a claim of adverse possession on Tract 1.  Judgment entered in state court in March 1996 quieted title and established boundaries of the Ortiz property. [Doc. 99, at 5].

In 1995, the Atchison Topeka & Santa Fe Railroad ("Railroad") became involved in a dispute with Lyons over allowing Lyons access to the ranch across railway property.  Lyons asked Pelton, whom TRG had hired to represent the Lyons in the prior lawsuits, to also represent them in connection with the Railroad claim.  [Doc. 99, at 5; Doc. 99, Ex. A, at 3-4; Doc. 103, at 2].

In a letter dated January 31, 1995, Pelton wrote to both the Lyons and TRG, advising that it was his understanding TRG does not provide title insurance on the issue of access, and that legal services rendered by him on the issue would therefore be billed directly to Lyons.  Lyons do not dispute that they received Pelton's January 31, 1995 letter, or that they understood the letter to mean that TRG was taking the position that the title policy did not insure against the Railroad's claim as presented in the 1995 lawsuit.  [Doc. 99, at 5].

In deposition testimony, Lyons admitted that they were aware of potential claims against TRG upon receiving Pelton's letter in 1995.  Specifically, Jeanne Lyon testified, "I think we always

---

[2]Aguilars stated in the Undisputed Material Facts that Judge Parker's ruling was entered on October 6, 2004.  This is a typographical error.  This date should read October 6, 1994, as Lyons point out in their Response [Doc. 103, at 2], as Aguilars acknowledge in their Reply [Doc. 107, at 9], and as the docket sheet in cause Civ. No. 92-434 JAP/JHG makes clear.  A court may *sua sponte* take judicial notice of its own records and files. St. Louis Baptist Temple v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979).

6

felt that [the issue raised in the 1995 lawsuit] should be covered by the policy, and we always felt that all of these with the [opposing party in the 1995 lawsuit] should have been covered by the title policy, by [Defendant]." Jeanne Lyon further testified that she conveyed to Pelton that she understood the TRG policy to cover the issues raised in the 1995 lawsuit, but she never contacted TRG to inquire about coverage. [Id., at 6].

On March 8, 1995, Pelton filed a complaint in the Fourth Judicial District Court, San Miguel County, on behalf of Lyons and against the Railroad and heirs of Ortiz to establish a right of way easement for Lyons. (The "Railroad/Ortiz case"). Lyons then incurred legal fees for Pelton's representation of Lyons' interest in the Railroad/Ortiz case. The case was set for trial before Judge Eugenio S. Mathis on January 21, 1998. On January 13, 1998, Lyons allege, Peltons advised them that he had not prepared for trial. The trial setting was vacated, and on January 19, 1998, Pelton entered into a settlement agreement with the Railroad in that case. [Id.].

At a hearing held on February 3, 1998, Judge Mathis granted the Railroad's motion to enforce settlement in the Railroad/Ortiz case. Lyons asked Pelton to appeal the order granting this motion, but Pelton advised against an appeal and none was taken. On June 1, 1998, Judge Mathis entered an order dismissing the case against Ortiz, because Pelton had taken no action on claims against the Ortiz defendants. [Id.].

On November 21, 2002, Pelton sued Lyons in state district court (the "Pelton case," referred to above), for attorney fees incurred in his past representation of Lyons. On May 27, 2003, Lyons answered Pelton's complaint and asserted a counterclaim against Pelton. They also added TRG as a counterclaim defendant in the Pelton case, alleging that TRG was obligated to pay Pelton's unpaid attorney fees. At this point, Lyons were represented by attorney J. Douglas Foster ("Foster"). [Doc. 99, at 7; Doc. 103, at 3].

7

The Amended Answer and Counterclaim filed in the Pelton case made general, conclusory allegations that TRG breached its duty to Lyons to correctly select counsel and correctly handle Lyons' claims. The pleading offered no information regarding the claims history under the policy and no information regarding the various lawsuits related to the Forked Lightning Ranch, to support the allegations. On September 22, 2003, the presiding judge granted an order dismissing TRG as a defendant to the counterclaim in the Pelton case, without prejudice. [Doc 99, at 7].

On March 10, 2004, Lyons filed a new complaint against TRG in state district court (the "TRG case," referred to above). Lyons were again represented by Johnson in this case. In their complaint, Lyons alleged breach of contract, insurance bad faith, and violations of the New Mexico Unfair Insurance Practices Act. Similar to the counterclaims in the Pelton case, the complaint in the TRG case made general, conclusory allegations and offered no information regarding the claims history under the policy and no information regarding the various lawsuits related to the ranch, in support of the allegations. [Doc. 99, at 7-8].

On July 2, 2004, Judge Linda Vanzi, the presiding judge in the Pelton case, granted an order consolidating the Pelton case with the TRG case for discovery purposes. Judge Vanzi later consolidated the cases for all purposes. [Doc. 99, at 8].[3]

On September 10, 2004, attorney Foster and his firm withdrew from representation of Lyons. Lyons then contacted Defendant Aguilar, seeking representation on a motion for sanctions filed by Pelton's counsel in the Pelton case. Lyons signed and returned the proposed Aguilar retainer

---

[3]Aguilars state in their Undisputed Material Facts that the cases were later consolidated for all purposes. Lyons do not contest this statement in the portion of their Response devoted to challenges to Defendants' statement of facts. Although Lyons argue later in their Response that an issue of fact exists as to whether the two cases were ever actually consolidated, they failed to comply with the requirements of D.N.M.LR-Civ. 56.1(b), and the Court accepts the assertion in the Undisputed Material Facts that the cases were consolidated for all purposes.

agreement on October 28, 2004. [Id.].

On November 4, 2004, Aguilar advised Lyons during a telephone conversation that the motion for sanctions had been withdrawn by Pelton's counsel. During that same conversation, the parties discussed Aguilar entering an appearance in the Pelton case and TRG case and conducting discovery in those matters. On November 5, 2004, Aguilar entered his appearance on behalf of Lyons in both cases. [Doc. 99, at 8-9].

On January 17, 2006, Aguilar filed a lengthy pleading which amended Lyons' Answer and Counterclaim in the Pelton case, including allegations of professional negligence and breach of fiduciary duties against Pelton. The pleading also included claims against TRG for breach of contract, breach of fiduciary duties and insurance bad faith, and violations of the New Mexico Unfair Insurance Practices Act and Unfair Practices Act. Aguilars state that the allegations against TRG were done by way of an amended complaint in the TRG case; Lyons dispute this, stating the TRG case was not amended. It appears from Lyons' complaint [Doc. 1, at 11] that the allegations against TRG were made in the lengthy pleading filed in the Pelton case. [Doc. 99, at 9; Doc. 103, at 3].

On April 24, 2006, TRG filed a motion for summary judgment on grounds the statute of limitations expired before Lyons filed their initial counterclaim/complaint against TRG on May 27, 2003. A short time later, Pelton also filed a motion for summary judgment, on grounds the statute of limitations barred Lyons's claims. [Doc. 99, at 9].

Following a hearing in late August 2006, Judge Vanzi granted TRG's motion for summary judgment. By order filed September 28, 2006, Judge Vanzi also granted Pelton's motion for summary judgment, in part, striking 33 of 42 allegations of professional negligence and breach of fiduciary duties against Pelton. The remaining claims against Pelton were set for jury trial. [Id.].

After a phone conversation between Aguilar and Lyons concerning Judge Vanzi's ruling and other matters disputed by the parties, Aguilar advised Lyons by letter dated September 6, 2006 that he was moving to withdraw as their counsel. On September 18, 2006, Judge Vanzi allowed Aguilar to withdraw as counsel, over the objection of Lyons.[4]   [Doc. 99, at 9; Doc. 103, at 3].

On October 10, 2006, Aguilar filed an attorney charging lien against any recovery in the Pelton and TRG cases.[5]   [Doc. 99, at 10; Doc. 103, at 3].

Lyons appealed the order granting TRG's motion for summary judgment. On June 26, 2008, in a memorandum opinion, the New Mexico Court of Appeals affirmed Judge Vanzi's decision to grant TRG's motion for summary judgment, on grounds the statute of limitations had run. In affirming Judge Vanzi, the Court of Appeals focused on Lyons' admission that they received Pelton's January 31, 1995 letter and their admissions in depositions that they believed the issues raised in the 1995 Railroad litigation should have been covered by the TRG policy. The Court of Appeals found that the record below supported Judge Vanzi's conclusion that Lyons knew or should have known, in 1995, that they had potential claims against TRG, and because Lyons failed to pursue the claims in a timely manner, their claims against TRG were barred by the statute of limitations. [Doc. 99, at 10].

---

[4]Lyons assert that the withdrawal occurred only in the Pelton case. [Doc. 103, at 3]. The cases were consolidated at this point, and this distinction is not material to any issue in this case.

[5]Lyons assert that Aguilars' statement in Undisputed Fact No. 35, that "Aguilar filed an attorney charging lien against any recovery in the Pelton Case and TRG Case" is incorrect, as there was no charging lien filed in the TRG case. However, Aguilars cite Lyons' complaint, Doc. 1, ¶ 56, to support this Undisputed Fact. That paragraph states: "On October 10, 2006, Defendants filed an Attorney Charging Lien . . . against Plaintiffs' client file that was still in Defendants' possession. The lien was against any recovery in the Pelton and TRG cases."  Thus, the Court accepts Undisputed Fact No. 35.

In their statement of Undisputed Facts, Aguilars list the ways in which Lyons allege that Aguilar breached his fiduciary duties and committed professional malpractice when representing Lyons in the Pelton and TRG cases. [Doc. 99, at 10-12; corrected in Errata, Doc. 101].  Lyons dispute two of these listings, saying only they are "not correct." [Doc. 103, at 3].  Lyons do not explain in what way these statements are "not correct," nor do they supply any citation to record evidence to support their assertion, and the Court therefore rejects the assertion.  They offer no counter affidavit, deposition testimony, response to interrogatories or requests for admissions to demonstrate any fact in controversy.

The ways in which Lyons assert Aguilars committed legal malpractice and breached fiduciary duties include:

>     a. Failing to complete an amended complaint and counterclaim against Pelton and TRG within the time period originally agreed to by Lyons and Aguilar and other counsel in those cases;
>
>     b. Failing to include in the amended complaint and counterclaim reference to documents that had been the basis for the counterclaim/complaint that was filed against Pelton and TRG in the original complaints;
>
>     c. Providing too much specific detail in the allegations contained in the amended complaint and counterclaim prepared by Aguilar on behalf of Lyons in the underlying litigation;
>
>     d. During the time Aguilar took to prepare the amended complaint and counterclaim in the underlying litigation, failing "to live up to the commitments made to the court and opposing counsel in the Pretrial Scheduling Orders";
>
>     e. Deliberately misleading Lyons as to the time required to prepare the amended complaints and the merit of the new allegations advanced;
>
>     f. Including in the amended complaint and counterclaim in the underlying litigation 1994 and 1996 title policy claims history, which Lyons allege caused Pelton and TRG counsel to file motions for summary judgment and dismissal pursuant to the statute of limitations;
>
>     g. Allowing Judge Vanzi to decide dispositive motions for the TRG case, although

the cases had been consolidated for discovery only before Judge Vanzi, and the TRG case had been assigned to Judge Baca for trial;

h.  Acquiescing in defense counsel's incorrect representations to Judge Vanzi that the Pelton case was a non-jury case;

i.  Filing a motion to withdraw as counsel and a charging lien against future recoveries in the Pelton case and TRG case;

j.  Filing a motion with the New Mexico Court of Appeals, which was granted, to dismiss Lyons' appeal from the district court's decision allowing Aguilar to withdraw from representation of Lyons and allowing the charging lien, because the district court orders were not final judgments;

k.  Failing to retain experts required to prove claims against Pelton.

Lyons allege that if Aguilar had exercised proper care and skill in prosecuting the Pelton case, then Lyons "could have obtained a judgment or a more favorable settlement against Pelton and would not have been forced to abandon" the Pelton case. [Doc. 99, at 12].

Lyons also allege that if Aguilar had exercised proper care and skill in prosecuting the TRG case, then Lyons "could have obtained a judgment or a more favorable settlement against TRG." Lyons further allege that they "would not have been forced to represent themselves pro se in appealing the dismissal of an amended complaint that did not include the critical elements of the original complaint." [Id.].

Lyons retained William Balin ("Balin"), an attorney admitted to practice in California with a legal background focused on legal ethics, to testify in support of their allegations that Aguilar breached fiduciary duties and committed professional negligence during his representation of Lyons on their claims in the Pelton case and TRG case, both of which involved contract, property, title and right of access issues. [Doc. 99, at 12-13; Doc. 99, Ex. F].  Balin's opinion evidence will be discussed further below.

12

**Discussion**

*Summary Judgment Standards*

A summary judgment proceeding is appropriately used to cut through the allegations of the pleadings and determine if there is a triable issue. Summary judgment will be granted when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). The Court does not decide the issues of fact, but rather determines if there is an issue that must be resolved at trial.

The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party meets its burden, the party opposing the motion must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Biester v. Midwest Health Servs, Inc., 77 F.3d 1264, 1266 (10th Cir. 1996). The party opposing the motion may not rest upon the mere denials of his pleadings to avoid summary judgment, nor will mere argument or contention of counsel suffice. Fed. R. Civ. P. 56(e); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

"The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine.'" Lawmaster v. Ward, 125 F.3d 1341, 1347

(10th Cir. 1997). Summary judgment can be entered only if there is insufficient evidence for a reasonable jury to return a verdict for the party opposing the motion. Anderson, 477 U.S. at 249. Thus, the Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., at 251-52.

The Court in considering a motion for summary judgment construes the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. Foster v. Alliedsignal, Inc., 293 F.3d 1187 (10th Cir. 2002).

### *Expert Testimony in Legal Malpractice Cases*

As noted above, contemporaneously with this Order the Court filed a ruling on Defendant's Motion for Partial Summary Judgment Dismissing With Prejudice All Claims Not Covered by Defendants' Professional Liability Insurance Policy [Doc. 98]. In that ruling, the Court dismissed Lyons' claims based on breach of contract, fraudulent inducement, constructive fraud, breach of the New Mexico Unfair Practices Act, intentional infliction of emotional distress, and unjust enrichment. Also dismissed were any claims for reimbursement of attorney fees paid by Lyons to Aguilar, and any claims alleging dishonest, fraudulent, criminal or malicious acts.

The dismissed claims are not covered by Aguilars' policy of professional liability insurance, and they are therefore not within the orders of the Bankruptcy Court which granted a partial lifting of the automatic stay so that this lawsuit could proceed.

What remains are Lyons' claims that Aguilar committed professional malpractice based on negligence, and breached his fiduciary duties to Lyons as their attorney. This Memorandum Opinion deals only with those claims, as they relate to the TRG litigation.

Unlike ordinary negligence cases where a party need only establish a duty, breach of the

duty, foreseeability that breach would result in damages, and that the breach caused damages, a party's burden in a professional negligence case is more significant and, indeed, more difficult.

For a plaintiff to prevail on a claim for malpractice or professional negligence, as asserted here, Lyons must prove through expert testimony that Aguilars were negligent in their handling of Lyons' claims against TRG, and that but for the negligence, Lyons would have prevailed in their underlying claim against TRG. Thus, Lyons have the burden of proving a case within a case. In other words, they must not only show that Aguilars' conduct fell below the professional standard of care, but they have the added burden of showing that but for the negligent acts of Aguilars, they would have prevailed in their case against TRG.

In New Mexico, a plaintiff alleging legal malpractice based on attorney negligence must make two showings: (1) that the attorney was negligent in the preparation, investigation, or trial of the case; and (2) the attorney's negligence was the proximate cause of plaintiff's injuries. Both elements of the cause of action must be proved by expert testimony from an attorney. Sanders v. Smith, 83 N.M. 706, 709, 496 P.2d 1102, 1105 (Ct. App. 1972).

To establish the causation factor in a legal malpractice case, the plaintiff has the burden of showing that, if counsel had acted with ordinary skill and care, plaintiff would have recovered at trial in the underlying action. Richardson v. Glass, 114 N.M. 119, 122, 835 P.2d 835, 838 (1992). Expert testimony is necessary on this element. Sanders v. Smith, 83 N.M. at 709.

Aguilar contends that although the Balin expert report gives opinions on the ways in which Aguilar was negligent, it does not include an expert opinion stating that Lyons would have been successful in their claims against TRG if Aguilar had acted with appropriate skill and care. This lack of an opinion on the causation element, Aguilar argues, is fatal to Lyons' professional malpractice claims. Lyons contend that expert testimony is not necessary on the causation element

15

of a legal malpractice cause of action, citing DeLisle v. Avallone, 117 N.M. 602, 874 P.2d 1266 (Ct. App. 1994); and Andrews v. Saylor, 134 N.M. 545, 80 P.3d 482 (Ct. App. 2003). These cases are distinguishable.

In DeLisle v. Avallone, the issues of negligence and proximate cause were decided in plaintiff's favor, on summary judgment, without expert testimony. The court took this action because the decisive fact establishing both negligence and causation had been litigated in a prior proceeding, and the attorney was collaterally estopped from raising that issue again. No such prior adjudication occurred in this case. Id., 117 N.M. at 608.

In Andrews v. Saylor, the New Mexico Court of Appeals held that, in a legal malpractice action, the issue of proximate cause is a question of fact for the jury. Id., 134 N.M. at 550. In so doing, the court rejected the defendant's argument that proximate cause in legal malpractice cases should always be determined by the court as a matter of law. However, it is only in the clearest of cases (as, for example in DeLisle v. Avallone, where a prior adjudication had already decided the critical issue) that a jury can make the proximate cause determination without the aid of expert legal testimony.

The court made this clear in the Sanders case:

> [E]xpert testimony is generally required to establish causal connection . . . . Expert testimony in claims of legal malpractice means testimony of lawyers. . . . . Two factors are imperative in legal malpractice based upon negligence, (1) that the trial attorney was negligent in the preparation, investigation, or trial of a case; and (2) his negligence was the proximate cause of the injury. A lay witness does not have the experience, knowledge and wisdom to opinionate on the complexities of trial practice, including the verdict that a jury will render.

Sanders v. Smith, 83 N.M. at 708-09.

In Andrews v. Saylor, the New Mexico Court of Appeals was merely making explicit that

the general rule in negligence cases – *i.e.,* that proximate cause is generally an issue for the trier of fact – applies to legal malpractice claims.  In so holding, the Andrews court did not establish a principle that expert testimony is not required to aid the trier of fact in determining proximate cause; indeed, the court made that quite clear:

> We recognize that ordinarily lay jurors will depend upon expert testimony in order to explain the standard of care, how the defendant breached that standard, and how that breach caused injury to the client . . . .  We are confident that a jury, aided by the testimony of experts versed in the relevant area of the law, is capable of [determining whether the attorney's negligence was the proximate cause of plaintiff's injury].

Andrews v. Saylor, 134 N.M. at 550 & n.3.

The Andrews case further made clear that the defendant in a legal malpractice case may meet his burden on summary judgment by showing "that Plaintiff's expert's testimony was insufficient to create a genuine issue of material fact" on the question of proximate cause.  Id., at 551.  Once the defendant meets that burden, the plaintiff may not simply point to the allegations of the complaint or rely on argument to counter the defendant's showing.  Anderson v. Liberty Lobby, Inc., *supra*.

In this case, Aguilars met their burden.  As discussed below, they demonstrate that Lyons' expert witness did not present an opinion on the causation element and, therefore, there is no issue of fact for the jury to decide on that element.  The deadline for submitting expert opinion has passed.  Lyons may not supplement any expert report or attempt to buttress any opinion, *see* RTC v. Gregory, No. CIV 94-52, slip op. (D.N.M. Dec. 13, 1995), and the expert opinion they submitted is insufficient.  Lyons failed to meet their burden of countering this initial showing, and summary judgment is therefore appropriate in this case.

### *Expert Opinion of William Balin*

The Undisputed Material Facts set forth in Aguilars' Motion, which are not properly

challenged by Lyons, establish that the expert report of William Balin contains opinions that Aguilar breached his fiduciary duties to Lyons and was negligent in the following respects:

>    a. Aguilar breached his fiduciary duty by seeking to withdraw from representing Lyons eight days before trial.
>
>    b. Aguilar was negligent in his preparation of a 160-page Amended Answer and Counterclaim, in the following respects:
>
>> i. The document was not a "short and plain statement of the claim" as required by court rules;
>>
>> ii. Aguilar "changed the nature of the allegations against TRG from ones that easily fell within the statute of limitations to ones that clearly did not";
>>
>> iii. The document was "ungainly" and created an opportunity for attack by the defense;
>>
>> iv. The document "created confusion" between the Pelton case and the TRG case.
>
>    c. Aguilar was negligent in treating the Pelton case and TRG case as consolidated for all purposes.
>
>    d. Aguilar was negligent by failing (1) to hire experts who were qualified to render opinions on liability and damages in the Pelton case, and (2) to see that Roger Eaton, the expert retained by Aguilar, was sufficiently educated on facts to submit a report that complied with Rule 26.

[Doc. 99, at 13-14].

Aguilars state in their Undisputed Material Facts that Balin does not give an expert opinion as to how any of the above-listed acts of negligence and breach of fiduciary duty were the proximate cause of Lyons' lack of success in the TRG litigation, in that he does not specify how the result of the TRG case would have been different had Aguilar not been negligent and not breached his fiduciary duties. [Doc. 99, at 14]. While Lyons state in their Response that this "is not correct," [Doc. 103, at 3], they failed to follow the requirements of Local Rule D.N.M.LR-Civ. 56.1(b) in

disputing material facts. Furthermore, in the argument portion of their Response, they fail to demonstrate that their expert did, in fact, present an opinion on causation. Summary judgment is therefore appropriate.

Balin does not give an opinion as how the result of the TRG litigation would have been different if Aguilar had not withdrawn from representing Lyons.

He does not give an opinion as to how or why TRG would not have been granted summary judgment based on the statute of limitations if Aguilar's Amended Answer and Counterclaim had been a short, plain statement of claims, had adopted the allegations in the original complaint, had not been "ungainly" and had not "created confusion" between the Pelton case and the TRG case.

He does not give an opinion that, if Aguilar had not treated the Pelton case and the TRG case as consolidated, the result in the TRG case would have been different.

Finally, Balin does not give an opinion that, if the necessary experts had been retained, Lyons would have succeeded in the TRG litigation.

Furthermore, Aguilars point out that TRG would have been able to raise the defense of statute of limitations in any event, even if Aguilar had not filed the lengthy amended complaint, had not withdrawn from representation, had not treated the Pelton and TRG cases as consolidated for all purposes, and had hired and properly prepared experts. [Doc. 99, at 17-18].

Aguilars establish that Lyons knew or should have known that they had claims against TRG for coverage under the title policy as early as 1995, when they were alerted to these claims by Pelton's letter. Lyons do not dispute this fact, nor could they; this issue was raised and decided in the state district court and affirmed in the state court of appeals. That issue was decided and, as a matter of law, Lyons' claims were barred by the statute of limitations. There is nothing on the record to create an issue of fact that the result of the TRG litigation would have been different if

Aguilar had done everything Balin says he should have done.

No genuine issue of material fact as to causation having been shown, summary judgment will be entered in favor of Defendants.

## **Order**

IT IS THEREFORE ORDERED that Defendants' Motion for Partial Summary Judgment on Plaintiffs' Claims for Malpractice-Professional Negligence and Breach of Fiduciary Duties in the Handling of Underlying Clams Against TRG [Doc. 99] is granted.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge