IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GARY J. LYON and
JEANNE G. LYON,

      Plaintiffs/Counter Defendants,

  vs.                                  CIVIL NO.  08-1114 LFG/DJS

ESTEBAN A. AGUILAR, SR.,
AGUILAR LAW OFFICES, P.C.,
and DOES I-X,

        Defendants/Counter Claimants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS FOR PROFESSIONAL MALPRACTICE AND BREACH OF FIDUCIARY DUTY IN HANDLING OF CLAIMS AGAINST PELTON

THIS MATTER is before the Court on Defendants' Motion for Partial Summary Judgment on Plaintiffs' Claims for Malpractice-Professional Negligence and Breach of Fiduciary Duties in the Handling of Underlying Clams Against Pelton. [Doc. 100].  The Court considered the motion, Plaintiffs' Response [Doc. 104], and Defendants' Reply [Doc. 109].  Oral argument is not necessary.

### Introduction

Gary J. Lyon and Jeanne G. Lyon ("Lyons") bring a professional negligence claim against attorney Esteban A. Aguilar, Sr. and his professional corporation, Aguilar Law Offices, P.C. (hereinafter referred to as "Aguilar" or "Aguilars").  Lyons' *pro se* lawsuit against Aguilars is based on diversity jurisdiction and arises out of their dissatisfaction with Aguilars' handling of an earlier lawsuit prosecuted on Lyons' behalf against Gregory V. Pelton, Esq. and Pelton & Associates, P.A. ("Pelton").

The Pelton litigation began when Pelton sued Lyons for attorney fees incurred in his representation of Lyons in state court cases involving title and access issues related to land the Lyons owned in Rowe, New Mexico.  Lyons counterclaimed, alleging professional negligence and breaches of fiduciary duty on the part of Pelton.  While this litigation was pending, counsel for Lyons withdrew, and Lyons then hired Aguilar to represent them in the Pelton case.

Pelton filed a Motion for Summary Judgment with respect to Lyons' counterclaim, and the motion was granted in part, the trial court striking 33 of 42 allegations of professional negligence and breach of fiduciary duties against Pelton.  At this point in the litigation, Aguilar withdrew as counsel for Lyons.  Lyons eventually dismissed all their claims against Pelton.

Lyons now bring this lawsuit against Aguilar, alleging professional malpractice and breach of fiduciary duties in his handling of the Pelton litigation.

### Factual and Procedural Background

In their Motion for Partial Summary Judgment, Aguilars set forth in numbered sequence the material facts they claim are undisputed, as required by Local Rule.  D.N.M.LR-Civ. 56.1(b).  Each undisputed fact references admissible evidence such as a document, affidavit, pleading or deposition testimony.

In their Response, Lyons note particular facts with which they disagree.  The Response does not comply with Local Rule 56.1(b), in that it does not "contain a concise statement of the material facts as to which the party contends a genuine issue does exist," and does not consistently "refer with particularity to those portions of the record upon which the opposing party relies."  Indeed, Lyons rely on argument and contention rather than on any admissible evidence.

The Factual Background set forth below includes the undisputed facts as stated by Aguilars, with notations as to any dispute between the parties as to the facts.  The Court finds that none of the

2

alleged factual disputes is material to the issues presented in the case and that summary judgment is therefore appropriate.

The complaint in this case was filed on November 24, 2008. [Doc. 1].  Lyons' claims arise from Aguilar's service as legal counsel for Lyons in two cases in New Mexico state district court: (1) a legal malpractice case against attorney Gregory V. Pelton ("Pelton"), counter-defendant in Cause No. CV-2002-08306, Second Judicial District Court, Bernalillo County; and (2) an insurance bad faith case against Title Resources Guaranty, Inc. ("TRG"), Cause No. CV-2004-01614, Second Judicial District Court, Bernalillo County.  [Doc. 100, at 3].  The first case will hereinafter be referred to as the "Pelton case"; the second will be referred to as the "TRG case."

Lyons' complaint originally alleged nine counts against Aguilars, including breach of contract, negligent misrepresentation, malpractice - professional negligence, constructive fraud, breach of fiduciary relationship, negligent infliction of emotional distress, breach of New Mexico Unfair Practices Act, intentional infliction of emotional distress, and unjust enrichment. [Doc. 1].

The claim for negligent infliction of emotional distress was dismissed by stipulation of the parties [Doc. 81].  All claims other than Count 3, professional malpractice, and Count 5, Breach of Fiduciary Duties, are dismissed with prejudice by a Memorandum Opinion and Order, entered contemporaneously with this Order, which grants Defendants' Motion for Partial Summary Judgment as to All Claims Not Covered by Professional Malpractice Insurance Policy [Doc. 98].

Thus, the only claims remaining in this case are Lyons' claims that Aguilar committed professional malpractice and breached fiduciary duties to Lyons in his handling of the two lawsuits, noted above, in state court.  In the present Motion, Aguilars assert that summary judgment is appropriate with respect to Lyons' claims for malpractice and fiduciary breach in connection with the handling of the lawsuit against Pelton.  Aguilars filed a separate Motion for Partial Summary

3

Judgment [Doc. 99] with respect to the handling of the lawsuit against TRG; that motion is the subject of a separate order in this case.

The Undisputed Material Facts are as follows:

Lyons purchased the Forked Lightning Ranch in Rowe, New Mexico, on September 25, 1990.  In conjunction with that purchase, Lyons bought a title insurance policy from TRG.  The policy insured Lyons against loss or damage resulting from "lack of right of access to and from the land."  The policy contained various exceptions that exempted from coverage loss or damage related to certain unrecorded easements and other rights of access. [Doc. 100, at 3-4].

Following Lyons' purchase of the ranch, Lyons became involved in two lawsuits with parties who claimed ownership or rights by adverse possession to Tract 1 of the ranch. [Id., at 4].

One of the lawsuits was brought by Tapia, who made an adverse possession claim to an 878-acre section of Tract 1.  Pursuant to the title insurance policy, TRG retained Pelton to represent Lyons in a quiet title action in federal court.  On October 6, 1994, Judge James A. Parker entered a judgment that quieted title in Lyons but awarded approximately 40 acres to Tapia.  According to Lyons, the judgment envisioned that Lyons would appeal the portion of Judge Parker's decision which awarded the 40 acres to Tapia, but Pelton failed to file an appeal. [Doc. 100, at 4-5; Doc. 1, at 4; Doc. 103, at 2; Docket Sheet in Lyon v. Tapia, Civ. No. 92-434 JAP/JHG].[1]

The other lawsuit was a quiet title action brought by Lyons against Ortiz, who also made a claim of adverse possession on Tract 1.  Judgment entered in state court in March 1996 quieted title

---

[1]Aguilars stated in the Undisputed Material Facts that Judge Parker's ruling was entered on October 6, 2004.  This is a typographical error.  This date should read October 6, 1994, as Lyons point out in their Response [Doc. 104, at 2], as Aguilars acknowledge in their Reply [Doc. 109, at 8], and as the docket sheet in cause Civ. No. 92-434 JAP/JHG makes clear.  A court may *sua sponte* take judicial notice of its own records and files.  St. Louis Baptist Temple v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979).

and established boundaries of the Ortiz property. [Doc. 100, at 5].

In 1995, the Atchison Topeka & Santa Fe Railroad ("Railroad") became involved in a dispute with Lyons over allowing Lyons access to the ranch across railway property. Lyons asked Pelton, whom TRG had hired to represent the Lyons in the prior lawsuits, to also represent them in connection with the railroad claim. [Doc. 100, at 5; Doc. 99, Ex. A, at 3-4; Doc 104, at 2].

In a letter dated January 31, 1995, Pelton wrote to both the Lyons and TRG, advising that it was his understanding TRG does not provide title insurance on the issue of access, and that legal services rendered by him on the issue would therefore be billed directly to Lyons. Lyons do not dispute that they received Pelton's January 31, 1995 letter, or that they understood the letter to mean that TRG was taking the position that the title policy did not insure against the railroad's claim as presented in the 1995 lawsuit. [Doc. 100, at 5].

In deposition testimony, Lyons admitted that they were aware of potential claims against TRG upon receiving Pelton's letter in 1995. Specifically, Jeanne Lyon testified, "I think we always felt that [the issue raised in the 1995 lawsuit] should be covered by the policy, and we always felt that all of these with the [opposing party in the 1995 lawsuit] should have been covered by the title policy, by [Defendant]." Jeanne Lyon further testified that she conveyed to Pelton that she understood the TRG policy to cover the issues raised in the 1995 lawsuit, but she never contacted TRG to inquire about coverage. [Id., at 5-6].

On March 8, 1995, Pelton filed a complaint in the Fourth Judicial District Court, San Miguel County, on behalf of Lyons and against the Railroad and heirs of Ortiz to establish a right of way easement for Lyons. (The "Railroad/Ortiz case"). Lyons then incurred legal fees for Pelton's representation of Lyons' interest in the Railroad/Ortiz case. The case was set for trial before Judge Eugenio S. Mathis on January 21, 1998. On January 13, 1998, Lyons allege, Pelton advised them

5

that he had not prepared for trial.  The trial setting was vacated, and on January 19, 1998, Pelton entered into a settlement agreement with the Railroad in that case. [Id., at 6].

At a hearing held on February 3, 1998, Judge Mathis granted the Railroad's motion to enforce settlement in the Railroad/Ortiz case.  Lyons asked Pelton to appeal the order granting this motion, but Pelton advised against an appeal and none was taken.  On June 1, 1998, Judge Mathis entered an order dismissing the case against Ortiz, because Pelton had taken no action on claims against the Ortiz defendants. [Id.].

On November 21, 2002, Pelton sued Lyons in state district court (the "Pelton case," referred to above), for attorney fees incurred in his past representation of Lyons.  On May 27, 2003, Lyons answered Pelton's complaint and asserted a counterclaim against Pelton.  They also added TRG as a counterclaim defendant in the Pelton case, alleging that TRG was obligated to pay Pelton's unpaid attorney fees.  At this point, Lyons were represented by attorney J. Douglas Foster ("Foster"). [Doc. 100, at 7; Doc. 104, at 3].

The Amended Answer and Counterclaim filed in the Pelton case made general, conclusory allegations that TRG breached its duty to Lyons to correctly select counsel and correctly handle Lyons' claims.  The pleading offered no information regarding the claims history under the policy and no information regarding the various lawsuits related to the Forked Lightning Ranch, to support the allegations.  On September 22, 2003, the presiding judge granted an order dismissing TRG as a defendant to the counterclaim in the Pelton case, without prejudice. [Doc 100, at 7].

On March 10, 2004, Lyons filed a new complaint against TRG in state district court (the "TRG case," referred to above).  Lyons were again represented by Johnson in this case.  In their complaint, Lyons alleged breach of contract, insurance bad faith, and violations of the New Mexico Unfair Insurance Practices Act.  Similar to the counterclaims in the Pelton case, the complaint in the

6

TRG case made general, conclusory allegations and offered no information regarding the claims history under the policy and no information regarding the various lawsuits related to the ranch, in support of the allegations.  [Doc. 100, at 7].

On July 2, 2004, Judge Linda Vanzi, the presiding judge in the Pelton case, granted an order consolidating the Pelton case with the TRG case for discovery purposes.  Judge Vanzi later consolidated the cases for all purposes. [Doc. 100, at 8].[2]

On September 10, 2004, attorney Foster and his firm withdrew from representation of Lyons. Lyons then contacted Defendant Aguilar, seeking representation on a motion for sanctions filed by Pelton's counsel in the Pelton case.  Lyons signed and returned the proposed Aguilar retainer agreement on October 28, 2004. [Id.].

On November 4, 2004, Aguilar advised Lyons during a telephone conversation that the motion for sanctions had been withdrawn by Pelton's counsel.  During that same conversation, the parties discussed Aguilar entering an appearance in the Pelton case and TRG case and conducting discovery in those matters.  On November 5, 2004, Aguilar entered his appearance on behalf of Lyons in both cases. [Doc. 100, at 8].

On January 17, 2006, Aguilar filed a lengthy pleading which amended Lyons' Answer and Counterclaim in the Pelton case, including allegations of professional negligence and breach of fiduciary duties against Pelton.  The pleading also included claims against TRG for breach of contract, breach of fiduciary duties and insurance bad faith, and violations of the New Mexico

---

[2]Aguilars state in their Undisputed Material Facts that the cases were later consolidated for all purposes.  Lyons do not contest this statement in the portion of their Response devoted to challenges to Defendants' statement of facts.  Although Lyons argue later in their Response that an issue of fact exists as to whether the two cases were ever actually consolidated, they failed to comply with the requirements of D.N.M.LR-Civ. 56.1(b), and the Court accepts the assertion in the Undisputed Material Facts that the cases were consolidated for all purposes.

Unfair Insurance Practices Act and Unfair Practices Act. Aguilars state that the allegations against TRG were done by way of an amended complaint in the TRG case; Lyons dispute this, stating the TRG case was not amended. It appears from Lyons' complaint that the allegations against TRG were made in the lengthy pleading filed in the Pelton case. [Doc. 100, at 8-9; Doc. 104, at 3].

On April 24, 2006, TRG filed a motion for summary judgment on grounds the statute of limitations expired before Lyons filed their initial counterclaim/complaint against TRG on May 27, 2003. A short time later, Pelton also filed a motion for summary judgment, on grounds the statute of limitations barred Lyons's claims. [Doc. 100, at 9].

Following a hearing in late August 2006, Judge Vanzi granted TRG's motion for summary judgment. By order filed September 28, 2006, Judge Vanzi also granted Pelton's motion for summary judgment, in part, striking 33 of 42 allegations of professional negligence and breach of fiduciary duties against Pelton. The remaining claims against Pelton were set for jury trial. [Id.].

After a phone conversation between Aguilar and Lyons concerning Judge Vanzi's ruling and other matters disputed by the parties, Aguilar advised Lyons by letter dated September 6, 2006 that he was moving to withdraw as their counsel. On September 18, 2006, Judge Vanzi allowed Aguilar to withdraw as counsel, over the objection of Lyons.[3] [Doc. 100, at 9; Doc. 104, at 3].

On October 10, 2006, Aguilar filed an attorney charging lien against any recovery in the Pelton and TRG cases.[4] [Doc. 100, at 9; Doc. 104, at 3].

---

[3]Lyons assert that the withdrawal occurred only in the Pelton case. [Doc. 104, at 3]. This distinction is not material to any issue in this case, since the withdrawal clearly occurred in the Pelton case. In addition, the Court has found that the two cases were consolidated at that point.

[4]Lyons assert that Aguilars' statement in Undisputed Fact No. 35, that "Aguilar filed an attorney charging lien against any recovery in the Pelton Case and TRG Case" is incorrect, as there was no charging lien filed in the TRG case. However, Aguilars cite Lyons' complaint, Doc. 1, ¶ 56,

Lyons appealed the order granting TRG's motion for summary judgment.  On June 26, 2008, in a memorandum opinion, the New Mexico Court of Appeals affirmed Judge Vanzi's decision to grant TRG's motion for summary judgment, on grounds the statute of limitations had run.  In affirming Judge Vanzi, the Court of Appeals focused on Lyons' admission that they received Pelton's January 31, 1995 letter and their admissions in depositions that they believed the issues raised in the 1995 Railroad litigation should have been covered by the TRG policy.  The Court of Appeals found that the record below supported Judge Vanzi's conclusion that Lyons knew or should have known, in 1995, that they had potential claims against TRG, and because Lyons failed to pursue the claims in a timely manner, their claims against TRG were barred by the statute of limitations. [Doc. 100, at 9-10].

In their Statement of Undisputed Facts, Aguilars state that Lyons allege that an inability to present testimony of an expert retained by Aguilar "forced" them to dismiss all claims against Pelton with prejudice on August 5, 2007. [Doc. 100, at 10].  Lyons assert in their Reply that this "is not correct," but they do not explain how the statement is incorrect.  [Doc. 104, at 3].  In support of their statement, Aguilars cited Lyons Complaint in this case [Doc. 1, at ¶ 65].  That portion of the Complaint alleges:

> One day before trial [in the Pelton case, after Aguilar was allowed to withdraw], the attorney expert witness that Defendants had put in place refused to provide expert testimony detailed in his expert witness report that was essential support testimony for the Lyons' claims against Pelton.  Gary Lyon was in Albuquerque prepared to go to trial as a pro se party.  In a telephone trial prep meeting the expert witness informed Mr. Lyon of his refusal to testify.  Because of this

---

to support this Undisputed Fact.  That paragraph states: "On October 10, 2006, Defendants filed an Attorney Charging Lien . . . against Plaintiffs' client file that was still in Defendants' possession. The lien was against any recovery in the Pelton and TRG cases."  Thus, the Court accepts Undisputed Fact No. 35.

> situation Plaintiffs were forced to settle the Pelton case by dismissing
> all of their claims or risk sizable financial damages.

Complaint [Doc. 1, at ¶ 65]. The language of the Complaint supports Aguilars' statement as to the

reason why Lyons were allegedly forced to abandon their case against Pelton, and the Court accepts

the Statement of Fact.

In their statement of Undisputed Facts, Aguilars list the ways in which Lyons allege that

Aguilar breached his fiduciary duties and committed professional malpractice when representing

Lyons in the Pelton case. [Doc. 100, at 10-12]. Lyons dispute two of these listings, saying only they

are "not correct." [Doc. 104, at 3]. Lyons do not explain in what way these statements are "not

correct," nor do they supply any citation to record evidence to support their assertion, and the Court

therefore rejects the assertion.

The ways in which Lyons assert Aguilars committed legal malpractice and breached

fiduciary duties include:

> a.  Failing to complete an amended complaint and counterclaim against Pelton and
> TRG within the time period originally agreed to by Lyons and Aguilar and other counsel in
> those cases;

> b.  Failing to include in the amended complaint and counterclaim reference to
> documents that had been the basis for the counterclaim/complaint that was filed against
> Pelton and TRG in the original complaints;

> c.  Providing too much specific detail in the allegations contained in the amended
> complaint and counterclaim prepared by Aguilar on behalf of Lyons in the underlying
> litigation;

> d.  During the time Aguilar took to prepare the amended complaint and counterclaim
> in the underlying litigation, failing "to live up to the commitments made to the court and
> opposing counsel in the Pretrial Scheduling Orders";

> e.  Deliberately misleading Lyons as to the time required to prepare the amended
> complaints and the merit of the new allegations advanced;

> f.  Including in the amended complaint and counterclaim in the underlying litigation

10

1994 and 1996 title policy claims history, which Lyons allege caused Pelton and TRG counsel to file motions for summary judgment and dismissal pursuant to the statute of limitations;

g.  Allowing Judge Vanzi to decide dispositive motions for the TRG case, although the cases had been consolidated for discovery only before Judge Vanzi, and the TRG case had been assigned to Judge Baca for trial;

h.  Acquiescing in defense counsel's incorrect representations to Judge Vanzi that the Pelton case was a non-jury case;

i.  Filing a motion to withdraw as counsel and a charging lien against future recoveries in the Pelton case and TRG case;

j.  Filing a motion with the New Mexico Court of Appeals, which was granted, to dismiss Lyons' appeal from the district court's decision allowing Aguilar to withdraw from representation of Lyons and allowing the charging lien, because the district court orders were not final judgments;

k.  Failing to retain experts required to prove claims against Pelton.

Lyons allege that if Aguilar had exercised proper care and skill in prosecuting the Pelton case, then Lyons "could have obtained a judgment or a more favorable settlement against Pelton and would not have been forced to abandon" the Pelton case. [Doc. 100, at 12].

Lyons also allege that if Aguilar had exercised proper care and skill in prosecuting the TRG case, then Lyons "could have obtained a judgment or a more favorable settlement against TRG." Lyons further allege that they "would not have been forced to represent themselves pro se in appealing the dismissal of an amended complaint that did not include the critical elements of the original complaint." [Id.].

Lyons retained William Balin ("Balin"), an attorney admitted to practice in California with a legal background focused on legal ethics, to testify in support of their allegations that Aguilar breached fiduciary duties and committed professional negligence during his representation of Lyons on their claims in the Pelton case and TRG case, both of which involved contract, property, title and

11

right of access issues. [Doc. 100, at 12; Doc. 99, Ex. F].  Balin's opinion evidence will be discussed further below.

## Discussion

### *Summary Judgment Standards*

A summary judgment proceeding is appropriately used to cut through the allegations of the pleadings and determine if there is a triable issue.  Summary judgment will be granted when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995).  The Court does not decide the issues of fact, but rather determines if there is an issue that must be resolved at trial.

The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party meets its burden, the party opposing the motion must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Biester v. Midwest Health Servs, Inc., 77 F.3d 1264, 1266 (10th Cir. 1996).  The party opposing the motion may not rest upon the mere denials of his pleadings to avoid summary judgment, nor will mere argument or contention of counsel suffice.  Fed. R. Civ. P. 56(e); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

"The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine.'" Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997). Summary judgment can be entered only if there is insufficient evidence for a reasonable jury to return a verdict for the party opposing the motion. Anderson, 477 U.S. at 249. Thus, the Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., at 251-52.

The Court in considering a motion for summary judgment construes the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. Foster v. Alliedsignal, Inc., 293 F.3d 1187 (10th Cir. 2002).

### Expert Testimony in Legal Malpractice Cases

As noted above, contemporaneously with this Order, the Court filed a ruling on Defendant's Motion for Partial Summary Judgment Dismissing With Prejudice All Claims Not Covered by Defendants' Professional Liability Insurance Policy [Doc. 98]. In that ruling, the Court dismissed Lyons' claims based on breach of contract, fraudulent inducement, constructive fraud, breach of the New Mexico Unfair Practices Act, intentional infliction of emotional distress, and unjust enrichment. Also dismissed were any claims for reimbursement of attorney fees paid by Lyons to Aguilar, and any claims alleging dishonest, fraudulent, criminal or malicious acts.

The dismissed claims are not covered by Aguilars' policy of professional liability insurance, and they are therefore not within the orders of the Bankruptcy Court which granted a partial lifting of the automatic stay so that this lawsuit could proceed.

What remains are Lyons' claims that Aguilar committed professional malpractice based on negligence, and breached his fiduciary duties to Lyons as their attorney. This Memorandum

13

Opinion deals only with those claims, as they relate to the Pelton litigation.

Unlike ordinary negligence cases where a party need only establish a duty, breach of the duty, foreseeability that breach would result in damages, and that the breach caused damages, a party's burden in a professional negligence case is more significant and, indeed, more difficult.

For a plaintiff to prevail on a claim for malpractice or professional negligence, as asserted here, Lyons must prove through expert testimony that Aguilars were negligent in their handling of Lyons' claims against Pelton and that, but for the negligence, Lyons would have prevailed in their underlying claim against Pelton.  Thus, Lyons have the burden of proving a case within a case.  In other words, they must not only show that Aguilars' conduct fell below the professional standard of care, but they have the added burden of showing that but for the negligent acts of Aguilars, they would have prevailed in their case against Pelton.  In addition, because Lyons allege legal malpractice in the handling of an underlying legal malpractice case, the causation factor requires a showing that, but for Pelton's negligence, Lyons would have prevailed in the Tapia and Railroad/Ortiz cases.

In New Mexico, a plaintiff alleging legal malpractice based on attorney negligence must make two showings: (1) that the attorney was negligent in the preparation, investigation, or trial of the case; and (2) the attorney's negligence was the proximate cause of plaintiff's injuries.  Both elements of the cause of action must be proved by expert testimony from an attorney.  Sanders v. Smith, 83 N.M. 706, 709, 496 P.2d 1102, 1105 (Ct. App. 1972).  Lyons submitted their Rule 26 expert reports containing all opinions that would be presented at trial.  It is too late to supplement any opinion, to buttress any opinion or to offer any new opinion, as all deadlines expired.  See RTC v. Gregory, No. Civ. 94-52, slip op. (D.N.M. Dec. 13, 1995).

To establish the causation factor in a legal malpractice case, the plaintiff has the burden of

14

showing that, if counsel had acted with ordinary skill and care, plaintiff would have recovered at trial in the underlying action. Richardson v. Glass, 114 N.M. 119, 122, 835 P.2d 835, 838 (1992). Expert testimony is necessary on this element. Sanders v. Smith, 83 N.M. at 709.

Aguilars contend that although the Balin expert report gives opinions on the ways in which Aguilar was negligent, it does not include an expert opinion and the basis for any such opinion, stating that Lyons would have been successful in their claims against Pelton if Aguilar had acted with appropriate skill and care. In addition, Aguilars contend, the Balin report fails to give an opinion stating that Lyons would have been successful in the Tapia and Railroad/Ortiz cases if Pelton had acted with appropriate skill and care.

The lack of an opinion on the causation element, Aguilar argues, is fatal to Lyons' professional malpractice claims. Lyons, however, contend that expert testimony is not necessary on the causation element of a legal malpractice cause of action, citing DeLisle v. Avallone, 117 N.M. 602, 874 P.2d 1266 (Ct. App. 1994); and Andrews v. Saylor, 134 N.M. 545, 80 P.3d 482 (Ct. App. 2003), and stating that only a jury should decide causation. The Court disagrees and notes the Lyons' authorities are distinguishable.

In DeLisle v. Avallone, the issues of negligence and proximate cause were decided in plaintiff's favor, on summary judgment, without expert testimony. The court took this action because the decisive fact establishing both negligence and causation had been litigated in a prior proceeding, and the attorney was collaterally estopped from raising that issue again. No such prior adjudication occurred in this case. Id., 117 N.M. at 608.

In Andrews v. Saylor, the New Mexico Court of Appeals held that, in a legal malpractice action, the issue of proximate cause is a question of fact for the jury. Id., 134 N.M. at 550. In so doing, the court rejected the defendant's argument that proximate cause in legal malpractice cases

should always be determined by the court as a matter of law.  However, it is only in the clearest of

cases (as, for example in <u>DeLisle v. Avallone</u>, where a prior adjudication had already decided the

critical issue) that a jury can make the proximate cause determination without the aid of expert legal

testimony.  The court made this clear in the <u>Sanders</u> case:

> [E]xpert testimony is generally required to establish causal
> connection . . . .  Expert testimony in claims of legal malpractice
> means testimony of lawyers. . . . .  Two factors are imperative in legal
> malpractice based upon negligence, (1) that the trial attorney was
> negligent in the preparation, investigation, or trial of a case; and (2)
> his negligence was the proximate cause of the injury.  A lay witness
> does not have the experience, knowledge and wisdom to opinionate
> on the complexities of trial practice, including the verdict that a jury
> will render.

<u>Sanders v. Smith</u>, 83 N.M. at 708-09.

In <u>Andrews v. Saylor</u>, the New Mexico Court of Appeals was merely making explicit that

the general rule in negligence cases – *i.e.,* that proximate cause is generally an issue for the trier of

fact – applies to legal malpractice claims.  In so holding, the <u>Andrews</u> court did not establish a

principle that expert testimony is not required to aid the trier of fact in determining proximate cause;

indeed, the court made that quite clear:

> We recognize that ordinarily lay jurors will depend upon expert
> testimony in order to explain the standard of care, how the defendant
> breached that standard, and how that breach caused injury to the
> client . . . .  We are confident that a jury, aided by the testimony of
> experts versed in the relevant area of the law, is capable of
> [determining whether the attorney's negligence was the proximate
> cause of plaintiff's injury].

<u>Andrews v. Saylor</u>, 134 N.M. at 550 & n.3.

The <u>Andrews</u> case further made clear that the defendant in a legal malpractice case may meet

his burden on summary judgment by showing "that Plaintiff's expert's testimony was insufficient

to create a genuine issue of material fact" on the question of proximate cause.  <u>Id.,</u> at 551.  Once the

16

defendant meets that burden, the plaintiff may not simply point to the allegations of the complaint or rely on argument to counter the defendant's showing.  <u>Anderson v. Liberty Lobby, Inc.</u>, *supra*.

Such is the case here.  Aguilars met their burden.  As discussed below, they demonstrate that Lyons' expert witness did not present an opinion on the causation element and, therefore, there is no issue of fact for the jury to decide on that element.  Lyons failed to come forward with admissible evidence countering Defendants' initial showing of entitlement to judgment, and summary judgment is therefore appropriate in this case.

### *Expert Opinion of William Balin*

The Undisputed Material Facts set forth in Aguilars' Motion, which are not properly challenged by Lyons, establish that the expert report of William Balin contains opinions that Aguilar breached his fiduciary duties to Lyons and was negligent in the following respects:

    a.  Aguilar breached his fiduciary duty by seeking to withdraw from representing Lyons eight days before trial.

    b.  Aguilar was negligent in his preparation of a 160-page Amended Answer and Counterclaim, in the following respects:

        i. The document was not a "short and plain statement of the claim" as required by court rules;

        ii.  Aguilar "changed the nature of the allegations against TRG from ones that easily fell within the statute of limitations to ones that clearly did not";

        iii.   The document was "ungainly" and created an opportunity for attack by the defense;

        iv.  The document "created confusion" between the Pelton case and the TRG case.

    c.  Aguilar was negligent in treating the Pelton case and TRG case as consolidated for all purposes.

    d.  Aguilar was negligent by failing (1) to hire experts who were qualified to render

opinions on liability and damages in the Pelton case, and (2) to see that Roger Eaton, the expert retained by Aguilar, was sufficiently educated on facts to submit a report that complied with Rule 26.

[Doc. 100, at 13-14].

Aguilars state in their Undisputed Material Facts that Balin does not offer an expert opinion as to how any of the above-listed acts of negligence and breach of fiduciary duty were the proximate cause of Lyons' lack of success in the Pelton litigation nor does he specify how the result of the Pelton case would have been different had Aguilar not been negligent and not breached his fiduciary duties. [Doc. 100, at 14]. While Lyons state in their Response that this "is not correct," [Doc. 104, at 3], they failed to follow the requirements of Local Rule D.N.M.LR-Civ. 56.1(b) in disputing material facts. They simply disagree but offer no evidence to support their disagreement. Furthermore, in the argument portion of their Response, they fail to demonstrate that their expert did, in fact, present an opinion on causation. Summary judgment is therefore appropriate.

Balin does not give an opinion as how the result of the Pelton litigation would have been different if Aguilar had not withdrawn from representing Lyons. He does not give an opinion as to how or why Pelton would not have been granted summary judgment on 33 of the 42 allegations based on the statute of limitations, and how the case would otherwise have been successful, if Aguilar's Amended Answer and Counterclaim had been a short, plain statement of claims, had adopted the allegations in the original complaint, had not been "ungainly" and had not "created confusion" between the Pelton case and the TRG case.

Balin does not give an opinion that, if Aguilar had not treated the Pelton case and the TRG case as consolidated, the result in the Pelton case would have been different. The Pelton case was, at all times, assigned to Judge Vanzi, who ruled on dispositive motions brought in that case. All claims against Pelton that were not dismissed on summary judgment were set for jury trial. Thus,

18

issues as to whether the two cases were, in fact, consolidated and whether Aguilar should have protested when opposing counsel stated the Pelton case was non-jury, are immaterial, as neither of these issues affected the outcome of the Pelton case.

Finally, Balin does not give an opinion that, if the necessary experts had been retained, Lyons would have succeeded in the Pelton litigation.

As to the underlying litigation, Balin opines that Pelton breached fiduciary duties and was negligent in the following ways:

> a. Pelton failed to communicate to Lyons his belief that the case against the Railroad had little likelihood of success;
>
> b. Pelton failed to actively pursue the claims against the Ortiz defendants in the Railroad/Ortiz case, resulting in dismissal of those claims;
>
> c. Pelton failed to appeal Judge Parker's decision in the Tapia case;
>
> d. Pelton failed to appeal Judge Mathis's order granting the Railroad's motion to enforce the settlement Pelton entered;
>
> e. Pelton failed to prepare for trial in the Railroad/Ortiz case;
>
> f. Pelton failed to advocate for the Lyons that TRG should fund the prosecution of the access case and the appeal of the ruling in the Railroad/Ortiz case.

While Balin thus finds fault with Pelton's conduct of the underlying litigation (the Tapia and Railroad/Ortiz cases), he does not give an expert opinion that the result of the cases would have been different if Pelton had not been negligent and breached his fiduciary duties. [Doc. 100, at 15; Doc. 99, Ex. F].  Indeed, Balin offers no opinion supported by fact or any matter related to the outcome of the Tapia and Railroad/Ortiz cases and how or why the result would have been different "but for" Pelton's alleged failings.

As discussed above, in this case Lyons have an extraordinary burden: They must demonstrate not only that they would have succeeded in their claims against Pelton if Aguilar had not been

negligent, but they must also show that they would have succeeded in the claims in the Railroad/Ortiz and Tapia cases if Pelton had not been negligent.  And they must make this showing with the testimony of an expert.  This, they simply failed to do.

Balin does state in his expert report that "had Mr. Aguilar properly prepared and presented the Lyons' case, it was more likely than not that they would have prevailed" [Doc. 99, Ex. F, at 11], but Balin fails to point to any facts that support that conclusion.  He does not give any opinion as to what would have happened in the underlying litigation if Pelton had not been negligent.  More specifically:

Balin does not offer an opinion to the effect that, if Pelton had advised Lyons of his belief that the Railroad/Ortiz case had little likelihood of success, Lyons would not have pursued the cases. Furthermore, there is nothing on the record to establish that Pelton did, in fact, believe that the case lacked merit at the outset; the only evidence is the Lyons' statement in discovery responses that they found out only later that Pelton "had convinced himself that our case was not winnable." [Doc. 109, at 12; Doc. 109, Ex. C, at 4].

Balin does not state that, if Pelton had actively pursued the claims against the Ortiz defendants in the Railroad/Ortiz case, those claims would have been successful.  He does not give an opinion that Lyons would have achieved access to their tract in this litigation, other than what they obtained through settlement in the Railroad/Ortiz case, and there is deposition testimony by Jeanne Lyon stating that their right of access to Tract 1 was obtained by settlement with the Railroad. [Doc. 109, at 11; Doc. 109, Ex. A, at 154].

Balin does not state that the appeals in either the Tapia case or the Railroad/Ortiz case, if Pelton had pursued those appeals, would have been successful.

He does not discuss how Pelton's preparation for the Railroad/Ortiz was lacking, nor how

Pelton's preparation would have meant success in that litigation.

He does not give an opinion as to whether Pelton's advocacy with TRG to fund the prosecution of the access cases and the appeal of the ruling enforcing the settlement in the Railroad/Ortiz case would have been meritorious, nor how or whether it would have convinced TRG to take a different position on their obligation to fund the litigation and appeal.

In sum, Balin fails to provide a legal opinion to support Lyons' contention that they suffered any damage as a result of Pelton's alleged negligence and breach of fiduciary duties.  Thus, the Lyons cannot establish a legal malpractice case against Aguilar, as they have not shown that anything Aguilar did would have made a difference in their litigation against Pelton.

While Balin makes the general statement that "had Mr. Aguilar properly prepared and presented the Lyons' case, it was more likely than not that they would have prevailed," he does not explain the basis for this conclusion.  An expert opinion is not sufficient to overcome a properly presented motion for summary judgment, if "it is conclusory and thus fails to raise a genuine issue of material fact."  Medina v. Cram, 252 F.3d 1124, 1133 (10th Cir. 2001).

No genuine issue of material fact as to causation having been shown, summary judgment will be entered in favor of Defendants.

## Order

IT IS THEREFORE ORDERED that Defendants' Motion for Partial Summary Judgment on Plaintiffs' Claims for Malpractice-Professional Negligence and Breach of Fiduciary Duties in the Handling of Underlying Clams Against Pelton [Doc. 100] is granted.


_____
Lorenzo F. Garcia
United States Magistrate Judge

21